Eastern District of Kentucky
FILED
JAN 31 2020
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY, LEXINGTON DIVISION

LAYNE BERRYMAN            PLAINTIFF

VS            **COMPLAINT**

KATHY STEIN )
)
ALAN STEIN )
)
JENNY SCOTT )
)
LEXINGTON-FAYETTE URBAN )
COUNTY GOVERNMENT (LFUCG) )
)
FORMER MAYOR JIM GRAY, ) Case No. _____
in his official capacity as Mayor of )
Lexington-Fayette Urban County )
Government )
)
LARRY ROBERTS, in his individual ) JURY TRIAL DEMANDED
and official capacity as )
Fayette County Attorney )
)
LEE TURPIN, in her individual and )
official capacity as First Assistant )
Fayette County Attorney )
)
ANDREW REINHART, in his individual )
and official capacity as Assistant Fayette )
County Attorney )
)
LFUCG DIVISION OF POLICE )
)
FORMER CHIEF OF POLICE MARK )
BARNARD, in his individual and )
official capacity as Chief of Police )
)
UNKNOWN POLICE DEPARTMENT )
OFFICERS AND STAFF )
)

KATHY WITT, in her individual and )
official capacity as Fayette County )
Sheriff )
 )
EDWARD "SCOOTER" STEIN, in his )
individual and official capacity as )
Director of Public Affairs for Fayette )
County Sheriff )
 )
UNKNOWN SHERIFF'S DEPARTMENT )
OFFICERS AND STAFF )
 )
VINCE RIGGS, in his individual and )
official capacity as Circuit Clerk of )
Fayette District Court )
 )
LARENA TURLEY, in her individual and )
official capacity as Supervisor for Fayette )
District Court )
 )
DEPUTY COURT CLERK "SM", )
in their individual and official )
Capacity as Circuit Court Deputy of )
Fayette County )
 )
GLENN VENCILL, in his individual and )
official capacity as Public Defender for )
the Dept. of Public Advocacy )
 )
FAYETTE COUNTY DETENTION CENTER )
 )
TATIANA SKORKA, LCSW, in her individual )
and official capacity as Licensed Clinical )
Social Worker for bluegrass.org/ )
Comprehensive Care—Fayette County )
Detention Center )
 )
REBECCA L. ASHER, PSY.D, in her )
individual and official capacity as )
Licensed Psychologist for Eastern )
State Hospital )
 )
KENTUCKY BAR ASOCIATION )
 )
KENTUCKY JUDICIAL CONDUCT )
COMMISSION )                    DEFENDANTS

**COMPLAINT**

Comes now PLAINTIFF, Layne Berryman, *pro se*, and for her Complaint against DEFENDANTS, in their positions as judges, attorneys, law enforcement officers, officers of the Court, consultants and advocates of the Court, and in their positions of influence within the community, and states as follows:

**Introduction**

1. This Complaint stems from the malicious prosecution of Plaintiff in the Commonwealth of Kentucky Fayette District Court system. It begins with a conspiracy by Defendants to deprive Plaintiff of her fundamental Constitutional rights by initiating false criminal charges. It evolves into a conspiracy by Defendants to obstruct justice in the criminal case that ensued.

2. The malicious prosecution was a deliberate act of retaliation against Plaintiff for her role in uncovering, documenting, and exposing a forgery scheme in the Commonwealth of Kentucky Court system. The ensuing obstruction of justice was the direct result of Defendant's efforts to keep their latest round of crimes from coming to light during the criminal proceedings.

**Jurisdiction and Venue**

3. This action is brought pursuant to 42 U.S.C. 1983 to redress the deprivation of Plaintiff's Constitutional rights. It is brought pursuant to 42 U.S.C. 1985 to redress the conspiracy to interfere with Plaintiff's civil rights.

4. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367.

5. Venue is proper under 28 U.S.C. 1391(b) and (c). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**Parties**

6. Plaintiff, Layne Berryman, is a 44-year-old female resident of Fayette County, Kentucky. She is a Certified Public Accountant (CPA license #9002), duly licensed to practice in the state of Kentucky. She is also a Certified Fraud Examiner (CFE license #7478138), licensed with the Association of Certified Fraud Examiners.

7. Defendant Kathy Stein is a Family Court judge for the Fayette County Family Court of the 22nd Judicial Circuit. She was appointed in October 2013 to replace Judge Jo Ann Wise, who originally handled Plaintiff's divorce case.

8. Defendant Alan Stein is the ex-husband of Defendant Kathy Stein and the father of Defendant Edward "Scooter" Stein. He maintains family and financial ties with Defendants Kathy and "Scooter" Stein and holds a position of influence within the community.

9. Defendant Jenny Scott is a family law attorney, currently practicing in Fayette County. She served as the attorney for Plaintiff's ex-husband, from March 20, 2012 to November 07, 2016.

10. Defendant Lexington-Fayette Urban County Government (LFUCG) is a local government organized under Kentucky law that can sue and be sued in its own capacity pursuant to KRS 65.200 et seq. It organizes, runs, and supervises the Division of Police and the Fayette County Detention Center. Defendants LFUCG, Division of Police, and Fayette County Detention Center will collectively be referred to as "Defendant LFUCG".

11. Defendant Jim Gray was the former Mayor and Chief Administrative Officer of LFUCG and was responsible for enforcement of laws, ordinances, and applicable state laws protecting the citizens of Lexington and Fayette County at all times relevant herein.

12. Defendants Larry Roberts, Lee Turpin, and Andrew Reinhart are all prosecutors in the Fayette County Attorney's Office. They are collectively referred to as "Defendant County Attorney".

13. Defendant Mark Barnard was the former Chief of Police and was responsible for the supervision and training of all LFUCG law enforcement officers at all times relevant herein. Defendant Mark Barnard and Defendant Unknown Police Department Officers and Staff will collectively be referred to as "Defendant Police Dept".

14. Defendant Kathy Witt is the current Sheriff of Fayette County and is responsible for the supervision and training of all Fayette County Sheriff's Department employees.

15. Defendants Kathy Witt, Edward "Scooter" Stein and Unknown Sheriff's Department Officers and Staff will collectively be referred to as "Defendant Sheriff's Dept".

16. Defendants Vince Riggs, Larena Turley, and Deputy Clerk "SM" are responsible for managing and maintaining the records of the Fayette County Courts. They will collectively be referred to as "Defendant Court Clerks".

17. Defendant Glenn Vencill is an attorney for the Department of Public Advocacy. He was assigned as the Public Defender for Plaintiff in the underlying criminal action.

18. Defendant Tatiana Skorka, LCSW, is a Licensed Clinical Social Worker for bluegrass.org/Comprehensive Care. She was responsible for the Mental Status Evaluation that was rendered at the Fayette County Detention Center.

19. Defendant Rebecca L. Asher, Psy.D. is a Licensed Psychologist at Eastern State Hospital. She was responsible for the Mental Health Evaluation at Eastern State Hospital.

20. Defendant Kentucky Bar Association is the regulating authority for the legal profession in the state of Kentucky.

21. Defendant Kentucky Judicial Conduct Commission is the only entity authorized under the Kentucky Constitution to take disciplinary action against a sitting Kentucky judge.

## Background

22. In April 2014, Plaintiff, a joint custodial and fit parent, found herself in the unfortunate situation of appearing before Judge Kathy Stein in what should have been a routine Family Court proceeding involving her then 17-year-old daughter. Within minutes of being in Judge Stein's courtroom, it became obvious to Plaintiff that her life would forever be changed. Plaintiff's basic Constitutional rights were immediately stripped from her for no apparent reason. In addition to losing timesharing with her teenage daughter, Plaintiff was fined over $5,000 in attorney fees, which were awarded to Defendant Jenny Scott, the attorney for Plaintiff's ex-husband. This was in addition to almost $4,000 in fees Plaintiff had paid her own attorney.

23. In November 2014, Plaintiff appealed Judge Stein's egregious ruling through the Kentucky Court of Appeals appellate process. Having no formal legal background, and due to the financial impact of Judge Stein's ruling, Plaintiff took the unusual step of filing a *pro se* appellate brief. To do so, Plaintiff had to learn all the Kentucky Revised Statutes, case law, civil rules, and court processes that pertained to her case.

24. Plaintiff's decision to appeal Judge Stein's ruling enraged both Judge Stein and Jenny Scott. As a result, these two Defendant's began their scheme to hide, forge and back date court orders in the Fayette Court system. This was done in an attempt to distort the Court record and to discourage Plaintiff from appealing the ruling.

25. When their Fayette County Court antics failed to deter Plaintiff, Defendants Stein and Scott expanded their efforts to the Kentucky Court of Appeals. They used their influence to have the appellate case pulled from the docket, so it was never heard. Instead, Defendants Stein and Scott, with the assistance of unknown parties at the Court of Appeals, wrote their own Court of Appeals Opinion and substituted it into the Appellate Court record. The Opinion was "rendered" in September 2015. Naturally, it confirmed Judge Stein's original, ludicrous ruling.

26. At first, Defendants Stein and Scott's scheme went undetected. However, upon extended review of the Appellate Opinion, which had been made available on-line, Plaintiff was able to determine that some level of impropriety had occurred.

    In July 2016, with Leave of the Court, Plaintiff filed a Petition for Rehearing with the Court of Appeals, essentially exposing the scheme perpetuated by Defendants Stein and Scott.

    In August 2016, along with that Petition, Plaintiff filed a Complaint with the Judicial Conduct Commission (JCC), explaining her findings.

    In September 2016, The Kentucky Bar Association (KBA) requested and received a copy of the JCC Complaint shortly thereafter.

    In October 2016, Plaintiff provided a copy of her JCC Complaint to the Federal Bureau of Investigation (FBI) and a criminal investigation was launched, unbeknownst to Defendants Stein and Scott.

## Malicious Prosecution and Obstruction of Justice

27. In May 2017, in retaliation for exposing their crimes to the JCC and the KBA, Defendants Stein and Scott retaliated against Plaintiff by initiating false criminal charges against Plaintiff. They conspired with Defendants in the Police and Sheriff's Department to forge two Criminal Complaints. Next, they conspired with Defendants in the Fayette County Attorney's Office to fraudulently prepare two Criminal Arrest Warrants based on the forged Criminal Complaints. Finally, the fraudulent Criminal Arrest Warrants were submitted to Judge Megan Thornton, who also acted improperly by signing the clearly unlawful Arrest Warrants in an obvious act of bad faith. These actions resulted in the arrest and subsequent prosecution of Plaintiff.

28. Knowing that she had not committed any crimes, and having been well versed in Defendants' mode of operandi by now, Plaintiff knew to quickly obtain the criminal case file documents from the District Court Open Record immediately following her arraignment and before Defendants were able to ascertain that Plaintiff was, once again, on to them.

29. Apparently unaware that Plaintiff was a Certified Fraud Examiner and could easily decipher their crimes just by reviewing the fraudulent documents, Defendants were shocked when Plaintiff began exposing their crimes in her *pro se* pleadings to the Court. Defendants in both the Police and Sheriff's Department, as well as Defendant Court Clerks, began conspiring to physically obstruct Plaintiff's ability to obtain the

Court documents. They began a deliberate effort to inflict as much physical and emotional trauma on Plaintiff as possible.

30. Defendant's in the County Attorney's office ignored 5 Motions for Discovery by Plaintiff in an intentional effort to withhold exculpatory evidence. The County Attorney's office was unable to produce even the most basic evidence to support a finding of probable cause. Eventually, Defendant Andrew Reinhart resorted to contacting Plaintiff's friends and family, pretending to be a detective with the Police Dept. He claimed he was "trying to keep Ms. Netherton *(now Berryman)* out of jail", in the hopes that he could get them to provide information so he would have something to use for the case.

31. In June 2017, when it became obvious that Plaintiff would not take a plea or otherwise succumb to the efforts by Defendants, a Public Defender, Defendant Glenn Vencill, was forced into the case by the Court, despite Plaintiff's objection. Defendant Vencill was now able to control and obstruct the defense. He was easily influenced by the other Defendants, who had an obvious interest in covering up the crimes that Plaintiff was exposing.

32. Defendant Vencill accepted financial consideration from Defendant Alan Stein to ensure Plaintiff missed a court hearing in July 2017. Plaintiff was eventually arrested on July 28th, 2017, on a fugitive Arrest Warrant, which specified a $10,000 bond could be posted.

33. When Defendant Sheriff Kathy Witt became aware that Plaintiff would be able to post the required $10,000 bond, the Arrest Warrant that had been issued by the Court was immediately was replaced by a Commitment Order that was issued at the Fayette County Detention Center. The Commitment Order, denying bond, was signed by an unknown Court Clerk using only the initials "SM".

34. While incarcerated for 7 days at the Fayette County Detention Center, Plaintiff was "evaluated" for less than 1 minute by Defendant Tatiana Skorka, a Licensed Clinical Social Worker. She diagnosed Plaintiff with a "thought disorder", despite having glaring evidence to the contrary, and recommended a "formal psychiatric evaluation prior to proceeding with the legal process".

35. Based on that evaluation, the Court ordered Plaintiff to undergo a mental health evaluation at Eastern State Hospital on August 4th, 2017. This evaluation was deemed necessary because Defendant Vencill intentionally failed to inform the Court that Plaintiff had already received the necessary mental health evaluation, and that he was in possession of the "clean bill of mental health" report.

36. After being in the hospital for almost 2 weeks without any mental health issues being diagnosed by the doctors and staff, she was eventually evaluated by the Court assigned Psychologist, Defendant Rebecca L. Asher, Psy.D. After speaking with Plaintiff for less than 10 minutes, Defendant Asher diagnosed Plaintiff with "Unspecified Schizophrenia

Psychotic Disorder", despite the fact that Plaintiff had not the first inkling of prior mental illness. This diagnosis was made by Defendant Asher after stating that the "court staff" told her that Plaintiff was "paranoid and delusional". As a result of Defendant Asher's egregious diagnosis, Plaintiff was subjected to a forced medication Order, which severely affected her memory and her appearance, as well as her basic ability to function.

37. Once Plaintiff was finally released from Eastern State Hospital in September 2017, after 43 days of involuntary commitment, the malicious prosecution efforts continued until the case was eventually Dismissed with Prejudice on January 31, 2019.

38. From the time Plaintiff was released from Eastern State Hospital until the date the case was dismissed, over 16 months later, Plaintiff was denied her Constitutional right to carry a gun. Also during that time, Plaintiff was ordered to continue taking the debilitating medication that was forced upon her through the Court Order.

39. In July 2019 Plaintiff was finally granted an Order of Expungement, which freed up the charges from showing up on a criminal background report.

40. The trauma Plaintiff experienced as a result of this inconceivable miscarriage of justice resulted in her suffering from, among other disorders, post-traumatic amnesia. As a result, Plaintiff only began to

regain her memory of these events in September of 2019. It is because of that fact that this case is only now being brought by Plaintiff.

41. While justice can never fully be served in this case, Plaintiff brings this lawsuit in one last effort to seek recompense from the Justice system that has previously failed her so absolutely. She once again finds herself desperately in pursuit of the Constitutional rights guaranteed to all citizens by the United States Constitution.

### Count 1—Malicious Prosecution—The Elements
### 42 U.S.C. 1983

42. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

43. As described more fully above, Defendants Stein and Scott initiated the criminal proceeding against Plaintiff by filing false police reports with the Police Dept, alleging that Plaintiff had committed Terroristic Threatening and Harassing Communications against the two Defendants. Those false police reports were then accessed by Defendants in the Police Dept, the Sheriff's Dept, and the County Attorney's office to generate falsified and forged Criminal Complaints. A quick review of the Criminal Complaints show that Defendants Stein and Scott are actually using the Criminal Complaints to send a "message" to the Plaintiff, specifically that they can "get to" Plaintiff's family. Defendants' actions were intentional, reckless, and deliberate.

44. Motions for Discovery filed by Plaintiff verified that no probable cause or evidence existed for the fraudulent Arrest Warrants to be issued.

45. The prosecution was eventually Dismissed with Prejudice. Certainly Plaintiff did not stipulate to probable cause or offer any concessions for that and ruling. Thus, the proceeding clearly terminated in Plaintiff's favor.

## Count 2—Conspiracy to Interfere with Civil Rights
## 42 U.S. 1985

46. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

47. When the Defendants in this malicious prosecution case realized that Plaintiff was going to fight the false charges, they were obviously caught off guard.

48. On May 11th, 2017, Plaintiff received a series of phone calls from the Court Clerk employees regarding Plaintiff's initial Motions for Discovery and for Return of Bond, both of which had been filed the day before. Defendant Larena Turley was one of the callers. She told me that my motions "would not be heard" and that, instead, they would be "thrown in the garbage". She then abruptly hung up the phone call and several hang up calls followed.

49. Also on May 11th, 2017, immediately following the harassing phone calls from the Court Clerks, several follow up phone calls were made by the Sheriff's Office. These calls included a Sheriff's deputy, who refused to give his name, requesting that Plaintiff "pick a spot to meet" him, so he could personally return my pleadings to me. When I refused to meet

the deputy and asked him not to come to my home, he immediately showed up at my residence. Upon arrival, the deputy knocked on the front door abruptly for several minutes before proceeding to tape the pleadings to my front door. Next, he continued to call me on the phone several more times and eventually made his way around to the side of my home before eventually leaving.

50. On May 31st, 2017, Plaintiff attempted to review the Open Record of her case, in preparation for her next court date. While reviewing the case file, Court staff directed the Sheriff's deputies to forcibly remove the case file from my possession because "she could be attempting to make copies" of the file. At that time, Plaintiff attempted to leave the District Courthouse to avoid an altercation. While I was leaving, two Sheriff's deputies followed me out of the Courthouse and told me if I came to the Courthouse again, "the next time I would be arrested". This happened several more times in the following weeks, while I was at the Courthouse.

51. Plaintiff received numerous death threats against her family throughout the case. Among the several threats, Defendants sent pictures meant to portray her daughter on an autopsy table to Plaintiff.

### Count 3—Failure to Intervene

### 42 U.S. 1985

52. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

53. In the manner described above, one or more of the Defendants stood by without intervening to prevent this egregious misconduct, despite having a reasonable opportunity to do so.

54. The widespread and rampant practices described in the preceding paragraphs were allowed to flourish because there has been no legitimate oversight or punishment for these actions.

55. As a result of Defendants' failure to intervene to prevent the violation of Plaintiff's Constitutional rights, she suffered pain and injures, as well as emotional distress.

### Count 4—Intentional Infliction of Emotional Distress

56. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

57. As described more fully in the preceding paragraphs, Defendants' actions to conspire to deprive Plaintiff of her Constitutional rights were a targeted, deliberate, and disgusting effort by many parties, intended to cause emotional distress.

58. In doing so, Defendants' conduct was extreme and outrageous, going beyond all possible bounds of decency, such that it can be considered completely intolerable in a civilized society. This conduct caused Plaintiff to suffer serious emotional distress of the nature no reasonable person could be expected to endure.

**Damages**

59. From the time Defendants Stein and Scott initiated their false criminal charges, to the time the case was expunged, was over 2 years.

60. Plaintiff spent 7 days in the Fayette County Detention Center, followed by 43 days in a state mental hospital.

61. Plaintiff's mugshot was shown on all the local television news stations and on social media. The falsified criminal charges were reported as the Top News Story, several times a day for several days after the alleged incident.

62. Plaintiff's family, friends, and former employers were contacted, harassed, and lied to by the County Attorney's Office.

63. Due to the charges, Plaintiff has been unable to obtain employment in her chosen profession, where she previously worked as a CFO for over 15 years.

64. The damage done to Plaintiff's reputation as a result of these false charges can never be repaired.

65. Plaintiff suffers from Post-Traumatic Stress Disorder and Post-Traumatic amnesia as a result of the proceedings and the events that surrounded the proceedings. She often has a hard time just leaving her home.

66. The forced medication Order Plaintiff was subjected to has forever changed her body, her appearance, her memory, and her ability to function. Plaintiff gained over 40 pounds as a result of the medication.

WHEREFORE, Plaintiff, Mary Layne Berryman, respectfully requests that this Court enter judgement in her favor and against Defendants, awarding compensatory damages, attorney's fees, and costs against each Defendant, and punitive damages against each individual, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, Layne Berryman, hereby demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

Layne Berryman, Plaintiff, *pro se*
177 Somersly Place
Lexington, KY 40515
Telephone (859) 536-8875
Fax (859) 369-2906