UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MARY LAYNE BERRYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-037-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KATHY STEIN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Mary Layne Berryman has filed a civil rights complaint alleging that at least 30 named and unnamed defendants participated in a wide-ranging conspiracy to violate her constitutional rights. Having reviewed the Complaint and the defendants' numerous motions to dismiss, the Court concludes Berryman has failed to state a claim upon which relief can be granted. As a result, the motions will be granted and this action will be dismissed, with prejudice.

**I.**

The story begins in April 2014 when Berryman was involved in a child custody dispute in the Fayette County Family Court. Judge Kathy Stein presided over the matter. Berryman represented herself and attorney Jenny Scott represented Berryman's ex-husband. Berryman reports that the matter was resolved in favor of her ex-husband. She lost timesharing with her teenage daughter and was denied reimbursement of over $7,000 in health insurance premiums. Additionally, Berryman was required to pay over $5,000 in attorney's fees.

Unhappy with Stein's handling of the case, Berryman filed a complaint with the Kentucky Judicial Conduct Commission ("JCC") in May 2014. However, the JCC dismissed the complaint in July 2014. That same month, Berryman appealed the family court decision to the Kentucky Court of Appeals. Berryman alleges that her decision to appeal the ruling "enraged" Stein and Scott and, as a result, they "began their scheme to hide, forge, and manipulate orders in the Fayette Court system . . . in an attempt to distort the Family Court record and to discourage Plaintiff from appealing the ruling." [Record No. 14, ¶ 32]

Judge Stein recused from Berryman's family court case in January 2015. *Id.* at ¶ 37. Berryman alleges that, at that point, Stein and Scott

> expanded their efforts to the Court of Appeals docket [and] conspired with unknown law clerks in the Court of Appeals office to have Plaintiff's appellate case pulled from the docket, so it was never actually heard. Instead, [Stein] and [Scott] wrote their own Court of Appeals opinion and entered it onto the record at the Court of Appeals.

*Id.* at ¶ 38. Berryman contends that, after reading the Court of Appeals opinion, she "determine[d] that some level of fraud had occurred," because it included information that was not included in the court record. *Id.* at ¶ 39. *See Netherton v. Cornette*, Nos. 2014-CA-1078-ME, 2014-CA-1212-ME (Ky. Ct. App. Sept. 18, 2015) (affirming family court decision).

Berryman filed a petition for rehearing with the Kentucky Court of Appeals in July 2016 but that petition was denied. The following month, she filed a second complaint against Judge Stein with the JCC. For reasons that are unclear, Berryman provided a copy of the JCC complaint to the Federal Bureau of Investigation in September 2016.

Berryman alleges that Stein and Scott initiated false criminal charges against her "in retaliation for exposing their crimes," in May 2017. Specifically, Berryman contends that Stein and Scott "filed false police reports," and conspired with defendants in "Law

Enforcement" and in the "County Attorney's Office" to generate "falsified and forged" criminal complaints, which were "used to generate fraudulent" arrest warrants.  *Id.* at ¶ 47. Berryman was charged with third-degree terroristic threatening based on statements allegedly made to Stein and harassing communications with respect to communications allegedly made to Scott.

Berryman claims that she was arrested within an hour of the warrants being issued and was jailed overnight before being released on a $7,500.00 bond the following day.  She elected to represented herself during the criminal proceedings in Fayette County District Court. Berryman reports that she filed numerous motions for discovery, but the defendants made efforts to obstruct her access to the records.  Berryman contends that she received telephone calls from Fayette County District Court Clerk Supervisor LaRena Turley during which Turley advised her that her motions "would not be heard" and that they would be "thrown in the garbage."  *Id.* at ¶ 60.

Berryman contends that, on May 11, 2017, "immediately following the harassing phone calls from the court staff," she received several telephone calls from the Fayette County Sheriff's Department.  One call was from an unnamed deputy sheriff who came to Berryman's home against her wishes and "knock[ed] on the front door abruptly for several minutes."  *Id.* at ¶ 91.  When Berryman did not respond, the deputy taped documents to the door and left after several minutes.

On May 23, 2017, Berryman went to the Fayette County Attorney's Office "to obtain whatever [d]iscovery might be available."  *Id.* at ¶ 62.  Defendant Andrew Reinhardt, Assistant Fayette County Attorney, informed her that the County Attorney's Office was not in possession of the harassing e-mails Berryman was accused of sending to Jenny Scott.  This led

Berryman to conclude that "the County Attorney's Office never reviewed any e-mails, or any other evidence prior to generating the fraudulent arrest warrants."

Berryman asserts that, in the next several weeks, "attempts by the prosecution to manufacture evidence became increasingly aggressive." According to Berryman, Defendant Reinhardt began contacting her friends, family, and former co-workers attempting to elicit information to use in the criminal case. Berryman also contends that Reinhardt called her mother and asked her to persuade Berryman to plead guilty. *Id.* at ¶ 65. Berryman alleges that Reinhardt filed a motion to amend bond conditions on June 16, 2017, and falsely advised the court that he had seen Berryman "lurking around the courthouse" and "loitering outside of Jenny Scott's office." Berryman claims that Defendant Mark Barnard, then-Chief of Police, issued a letter in support of the motion which contained false accusations about her. The motion to amend bond conditions was denied. *Id.* at ¶ 68.

Berryman also alleges that, during an unspecified hearing, Defendant Reinhardt had an unknown individual come into the courtroom and pretend to need medical assistance "while the bailiffs were all mysteriously out of the courtroom." According to Berryman, this was done to "trick [her] into assisting the man" so that she would miss her court appearance. *Id.* at ¶ 69.

On May 31, 2017, Berryman attempted to review her criminal case file in preparation for her next hearing. She alleges that, while she was reviewing the file, district court staff summoned sheriff's deputies, who forcibly removed the file from her possession. Berryman reports that the deputies followed her out of the courthouse and informed her that she would be arrested if she came to the courthouse again. She reports that this happened two more times

- 4 -

in the weeks to follow.  Additionally, court staff would not allow her to make copies of the file, but it appears she could request to have copies made for her.  *Id.* at ¶ 94.

Berryman also contends that she received numerous death threats throughout the proceedings.  She provides the following example:

> Defendants Stein [sic] hired a man to park a van down the street from [Berryman's] house.  Through the use of a fake wi-fi hotspot, this man was able to send threats to [her] phone.  These messages included threats to have her daughter arrested and killed, as well as threats to have [Berryman's] head 'cut off.'  Among the most disturbing images sent to [Berryman's] cell phone was an image meant to portray her daughter on an autopsy table.

*Id.* at ¶ 96.

Attorney Glenn Vencill was appointed to represent Berryman in the criminal proceedings in late June 2017.  Berryman asserts that Vencill was "forced into the case," and was "clearly rooting for the prosecution."   Around the same time, Judge Julie Goodman ordered Berryman to submit to a mental health evaluation.  *Id.* at ¶ 71.  Berryman claims that LaRena Turley refused to provide the mental health facility ("Comp Care") with the order for the evaluation.  Regardless, Comp Care performed a mental health evaluation and provided the report to attorney Vencill.

According to Berryman, Turley emailed Judge Goodman and the prosecutor, advising them that she had gone to the wrong facility for her evaluation.  Reinhardt forwarded Turley's email to Vencill, who "pretended to have no knowledge" of the mental health evaluation.  *Id.* at ¶ 76.  Berryman also contends that Vencill withheld the date of the next court hearing from her.  As a result, Berryman alleges that she missed the hearing and Judge Goodman issued a warrant for her arrest, "with a $10,000 cash bond for release."  She was arrested on July 28, 2017.

Berryman claims that her $10,000.00 bond was revoked at the Fayette County Detention Center ("FCDC") during the booking process. Deputy Court Clerk "SM" issued a commitment order and Berryman spent the next seven days in jail, during which time she underwent another mental evaluation. *Id*. at ¶¶ 80-81. Defendant Tatiana Skorka, a licensed clinical social worker at FCDC, diagnosed Berryman with a thought disorder and recommended a formal psychiatric evaluation before proceeding with the legal process. Berryman was then committed to Eastern State Hospital for formal evaluation.

Defendant Rebecca Asher, Psy.D., evaluated Berryman at Eastern State and diagnosed her with unspecified schizophrenic psychotic disorder. According to Berryman, she was forced to take medication and was ordered to stay in the hospital for an additional month. Berryman was released following 43 days of involuntary commitment, but was required to wear an ankle monitor for the following month. The criminal proceedings were held in abeyance for a year until they were eventually dismissed with prejudice in January 2019. Berryman reports that the charges were expunged in July 2019.

**II**.

A *pro se* litigant's complaint is read with more leniency than that afforded to pleadings drafted by a lawyer. However, Berryman's Complaint does not comply in any meaningful way with the Federal Rules of Civil Procedure.[1] Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(d). Berryman's 25-page narrative is anything but compliant with the rule.

---

[1]     Berryman was permitted to file a Second Amended Complaint on February 24, 2020. [Record No. 14]  It is the operative pleading and will be referred to as the "Complaint."

Berryman has listed at least 30 named and unnamed defendants, but it is largely unclear which claims relate to which defendants. Many of the defendants identified in the introductory "Parties" section of the Complaint are never mentioned again. Other times, the defendants are referred to generically as "defendants in law enforcement" or "defendants in the county attorney's office," for example. Such threadbare allegations are insufficient because they do not give defendants fair notice of what claims are asserted against them or the grounds upon which they rest. *See Bondex Intern., Inc. v. Hartford Acc. & Indemn. Co.*, 667 F.3d 669, 681 (6th Cir. 2011).

Factual allegations set forth in a complaint must do more than create speculation of a legally cognizable cause of action. Instead, they must show entitlement to relief and give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Berryman's Complaint is difficult to follow because it contains many superfluous details, which she has failed to connect to any particular legal claims. The individual "counts," on the other hand, are supported in large part by recitations of the elements of the causes of action and conclusions of law. And while *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers, they must still meet minimum requirements under the Federal Rules of Civil Procedure. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (noting that "[t]he leniency granted to pro se [litigants] . . . is not boundless.").

The Court also notes that it need not accept factual allegations as true when they "rise to the level of the irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). *See also Apple v. Glenn*, 183 F.3d 477, 479-80 (6th Cir. 1999) (observing that a district court may dismiss a complaint when the allegations are "totally implausible, attenuated,

unsubstantiated, frivolous, devoid of merit, or no longer open to discussion."). Here, the plaintiff's unsubstantiated claim that multiple law enforcement agencies, state court judges, the mayor of Lexington, and the Governor of Kentucky, among others, conspired to bring false criminal charges against her is fantastical. Underscoring these implausible allegations are Berryman's more recent filings in which she claims that the defendants have hacked her phones and computers and attacked her with malware. [Record No. 29, p. 5] She also suggests that the defendants targeted her in "4 near-miss car wrecks," and were behind a serious car accident involving her 84-year old father. *Id.* Berryman also has expressed unfounded suspicions that "unknown parties" are attempting to improperly influence these proceedings and has asked the Court to intervene. [Record No. 30, p. 4]

While the Court does not dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), *see Apple*, 184 F.3d at 480, it should be noted that many of the plaintiff's factual allegations are implausible and, therefore, do not support her legal claims against the defendants.

### III.

While the various deficiencies in Berryman's Complaint justify dismissal under Rule 8(a), the Court has reviewed each of the defendants' motions to dismiss and they all are well-taken. Since the motions raise many of the same arguments, the Court will address the recurring issues that cause Berryman's claims to fail.

### A.     Standard of Review for Rule 12(b)(6) Motions

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if the complaint contains factual allegations that

allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court accepts the well-pleaded factual allegations of the complaint as true, threadbare recitals of the elements of a cause of action supported by conclusory statements are not entitled to a presumption of truth. *Id.*

A plaintiff is not required to show that the defendant probably is liable, but the plaintiff is required to allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Conclusory and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to withstand a motion to dismiss. *Id.* The Court conducts a fair reading of the complaint as a whole to determine whether there is sufficient factual support for the plaintiff's claims. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011); *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016).

### B.     Claims Under 42 U.S.C § 1985

Berryman alleges a conspiracy to interfere with civil rights through intimidation, threat, or force under 42 U.S.C. § 1985(2) in Count II of the Complaint. This claim appears to be limited to the sheriff's office defendants based on their alleged treatment of Berryman at the courthouse and the "Defendants Stein" based on the allegation regarding threatening text messages that were sent from a van parked outside of Berryman's house. [*See* Record No. 14 ¶¶ 88-96]

The first clause of 42 U.S.C. § 1985(2) prohibits conspiracies to influence parties, witnesses, or jurors in federal court proceedings. It clearly does not apply in this case because Berryman has not identified any federal court proceeding in the Complaint. The second clause of § 1985(2) prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights. Berryman appears to concede that she has

not stated a claim under § 1985(2), as she does not address it in response to various motions to dismiss.  [*See* Record No. 46.]

Despite Berryman's post hoc argumentation, it does not appear that she attempted to assert a claim under 42 U.S.C. § 1985(3).  [*Compare* Record No. 14, ¶¶ 88-96 *with* Record No. 46, p. 11.]  Regardless, she has failed to adequately state a claim under either provision of § 1985.  The Sixth Circuit has repeatedly held that a plaintiff must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action."  *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992) (citation and internal quotation marks omitted); *Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010).  Further, "conspiracy claims must be pled with some degree of specificity and  . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

Berryman does not allege in her Complaint that there was a class-based discriminatory animus behind the defendants' actions.  To the extent Berryman alleges an animus behind any of the defendants' actions, she contends that the alleged actions were taken in "retaliation against [her] for her role in uncovering, documenting, and exposing a forgery scheme in the Commonwealth of Kentucky Court system."  [Record No. 14, ¶ 2]  But there is simply nothing in the Complaint to suggest that the defendants' alleged actions were taken because of Berryman's membership in a protected class.

In her consolidated response to the defendants' motions to dismiss, Berryman asserts, "[f]or purposes of clarification, Plaintiff is asserting her status as a single, female over the age of forty as the class-based discriminatory animus behind the Defendants' actions."  [Record No. 46, p. 11]  Berryman's offhand comment does not remedy the deficiency in her Complaint.

*See, e.g., Dukes v. Mid-Eastern Athletic Conf.*, 213 F. Supp. 3d 887, 893 (W.D. Ky. 2018). *See also Brown v. Accenture Fed. Servs.*, No. 15-24, 2016 WL 3298543, at *12 n.20 (E.D. Ky. June 13, 2016) (plaintiff could not use his response to defendant's motion to dismiss as a vehicle to cure deficiencies in complaint). Accordingly, all claims under 42 U.S.C. § 1985 will be dismissed for failure to state a claim.

## C.   Claims Under 42 U.S.C § 1983

Title 42 U.S.C. § 1983 does not create substantive rights; instead, it creates a federal cause of action against "any person" who deprives someone of a federal constitutional right while acting under color of state law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006).

### 1.   False Imprisonment

Berryman claims that various unspecified defendants falsely imprisoned her by causing her to be confined to the Fayette County Detention Center following her arrest. She also claims that Defendants Skorka and Asher falsely imprisoned her by performing mental health evaluations that resulted in her being committed to a psychiatric hospital. However, false imprisonment consists of detention without legal process and ends when the victim is held pursuant to such process. *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007); *Juillerat v. Mudd*, 735 F. App'x 887, 890 (6th Cir. 2018). Berryman claims that she was unlawfully detained *following* the wrongful institution of legal process and, therefore, the alleged unlawful detention would form part of the damages for the entirely distinct tort of malicious prosecution. *See id.* Accordingly, the § 1983 false imprisonment claims will be dismissed.[2]

---

[2]    This appears to be the only claim that Berryman has asserted against Defendants Asher and Skorka. While Berryman has failed to state a claim against Asher and Skorka for the reasons stated

## 2.       Malicious Prosecution[3]

The Sixth Circuit recognizes a constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration."  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).  To succeed on a malicious prosecution claim premised on a violation of the Fourth Amendment, a plaintiff must prove the following: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) that the criminal proceeding was resolved in the plaintiff's favor.  *Id.* at 308-09.

Each of the moving defendants contend that Berryman has failed to allege sufficient facts to articulate a claim for malicious prosecution.

### a.       Law Enforcement Defendants

To the extent Berryman contends that the Lexington Police and Fayette County Sheriff's Departments maliciously prosecuted her, local governing bodies are "liable under § 1983 only if the challenged conduct occurs pursuant to the municipality's official policy, such that the municipality's promulgation or adoption of the policy can be said to have caused one of its employees to violate the plaintiff's constitutional rights."  *D'Ambrosio v. Marino*, 747

---

above, an official-capacity claim against Asher also would be barred based on the doctrine of sovereign immunity. *See Strunk v. W. Ky. Univ.*, No. 74-95, 1975 WL 252, at *2 (E.D. Ky. Aug. 6, 1975); *Stanziano v. Cooley*, --S.W.3d--, 2019 WL 2896037 (Ky. Ct. App. July 5, 2019) (reflecting that University of Kentucky Healthcare does business as Eastern State Hospital).

[3]       Berryman asserts claims for malicious prosecution under 42 U.S.C. § 1983 in both Counts I and III of the Complaint.  Count III is labeled "Institution or Continuation of Original Judicial Proceedings" and appears to relate to events following the events alleged in Count I.

F.3d 378, 386 (6th Cir. 2014) (citing *Monell*, 436 U.S. at 692).   The Sixth Circuit has recognized four avenues through which a plaintiff can hold a municipality liable under § 1983: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of intolerance or acquiescence of federal rights violations." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 515 (6th Cir. 2019) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Here, Berryman has not alleged facts plausibly indicating that Fayette County, the Fayette County Sheriff's Department, Lexington Fayette Urban County Government, or the Lexington Police Department caused a constitutional violation under any of these theories. Accordingly, the malicious prosecution claims asserted against these defendants will be dismissed.

Berryman also asserts Fourth Amendment malicious prosecution claims against Mark Barnard in his official capacity as Chief of Police; Kathy Witt in her official capacity as Fayette County Sheriff, and Edward Stein in his official capacity as Director of Public Affairs for the Fayette County Sheriff.   A § 1983 claim against a municipal employee or agent for acts undertaken in an official capacity is another way of bringing a claim against the municipality that the employee or agent represents.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Because Berryman has not alleged facts plausibly indicating that the entities are liable for constitutional violations, the official capacity claims against these defendants will be dismissed.

Berryman also asserts individual capacity claims against the Law Enforcement and Sheriff's Department defendants.   "A police officer cannot be held liable for Fourth

Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecution is truthful." *Kinkus v. Village of Yorkville, Ohio*, 289 F. App'x 86, 91 (6th Cir. 2008). *See also King v. Harwood*, 852 F.3d 568, 583 (2017). Berryman does not allege facts indicating that any particular law enforcement or sheriff's department defendant made, participated in, or influenced the decision to bring charges against her. And such an allegation cannot be inferred from a fair reading of the Complaint. [*See* Record No. 14, ¶ 47 (Stein and Scott initiated the charges against Berryman in retaliation for "exposing their crimes.").]

The few factual allegations involving these defendants lack relevance to the elements required to establish malicious prosecution. For instance, Berryman alleges that, *after* she was charged, "law enforcement" attempted to "withhold" her charging documents, but she was able to obtain them at the courthouse. [Record No. 14, ¶¶ 58-59] Berryman also claims that Defendant Barnard, former Chief of Police, tendered a letter to the Fayette County District Court in 2017 in support of the prosecution's motion to amend her bond conditions. Berryman contends that the letter included "several obviously falsified statements" and was written "to deter [Berryman] from uncovering [Barnard's] role in preparing the forged [c]riminal [c]omplaints." *Id.* at ¶ 68. According to Berryman, the motion to amend her bond conditions was denied.

While Berryman suggests that the defendants "generate[d] falsified and forged criminal complaints," she makes no effort to identify the nature of the alleged falsehoods or forgeries or who made them. *See Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir. 2011) (malicious prosecution claim dismissed when plaintiff implied that defendants manufactured evidence but did not identify specific conduct committed by individual defendants). Additionally, she has

identified the defendants generically as "Law Enforcement" and "Sheriff's Department," when these labels actually represent numerous individual defendants. It is insufficient, even at the motion-to-dismiss stage, to make such vague and conclusory allegations without any factual support. *See Meeks v. Larsen*, 611 F. App'x 277, 282-83 (6th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). Accordingly, the malicious prosecution claims against Mark Barnard, Kathy Witt, and Edward Stein, Unknown Police Department Officers and Staff, and Unknown Sheriff's Department Officers and Staff, in their individual capacities, will be dismissed.

### b.    Jim Gray, LFUCG, and the FCDC

Berryman has named as a defendant former Lexington Mayor Jim Gray in his official capacity as Mayor of Lexington Fayette Urban County Government ("LFUCG"). She has not mentioned Gray in the Complaint other than to allege that he was responsible for "the enforcement of laws, ordinances, and applicable state laws protecting the citizens of Lexington and Fayette County" during the relevant time period. [Record No. 14, ¶ 14] Because a claim against Gray in his official capacity is regarded as a claim against LFUCG, any claims against Gray will be dismissed. *See Kustes v. LFUCG*, No. 5: 12-323, 2013 WL 4776343, at *1 (E.D. Ky. Sept 3, 2013).

Berryman has not alleged any wrongdoing on the part of the Fayette County Detention Center. Regardless, it is a merely a facility owned and operated by LFUCG. *See Jones v. Fayette Cty. Detention Ctr.*, No. 5: 15-312-JMH, 2015 WL 6964276, at *1 (E.D. Ky. Nov. 10, 2015). To prevail on a claim against the LFUCG under § 1983, Berryman must establish that her civil rights were violated pursuant to and as a direct result of an official policy or custom of LFUCG. *Wilson v. Fayette Cty. Detention Ctr.*, No. 5: 12-238-KSF, 2013 WL 529931, at *2-3 (E.D. Ky. Feb. 8, 2013). The Complaint includes no allegations suggesting that such an

official policy or custom existed.  Accordingly, the claims against LFUCG also will be dismissed.

### c.       County Attorney Defendants

Berryman asserts malicious prosecution claims against Defendants Larry Roberts, Lee Turpin, and Andrew Reinhardt, in both their individual and official capacities, as attorneys with the Fayette County Attorney's Office.  As an initial matter, it is clear that the official capacity claims against these defendants cannot proceed because Berryman has not alleged any facts suggesting that the defendants acted pursuant to an official custom or policy of the Fayette County Attorney's Office.  *See D'Ambrosio*, 747 F.3d at 386.

Her individual capacity claims against Roberts, Turpin, and Reinhardt fare no better. In an individual capacity suit, § 1983 creates a cause of action based on personal liability and, therefore, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.  *See Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 87 (5th Cir. 2014); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647-48 (6th Cir. 2012).  Berryman has failed to make any factual allegations concerning Roberts or Turpin.  As a result, the claims against them will be dismissed.

The Court also will dismiss Berryman's malicious prosecution claim against Reinhardt. Berryman claims that the "Defendants in the County Attorney's Office" conspired to generate false and forged complaints.  Specific to Reinhardt, Berryman alleges that, when she went to the County Attorney's Office to obtain discovery, Reinhardt told her that he did not have the materials and would have to obtain them.  She alleges that "the prosecution" attempted to "manufacture evidence," explaining that Reinhardt contacted her friends and family attempting to gain information to use for the case.  [Record No. 14, ¶ 64]  She also claims that

Reinhardt sent pictures of a stranger to three of her acquaintances and told them that she had been "lurking" around the courthouse in an effort to "alarm them into cooperating with the prosecution." *Id.* at ¶ 66.

Put simply, these allegations do not create a plausible claim that Reinhardt made, influenced, or participated in the decision to prosecute Berryman. With the exception of the initial conspiracy allegation, which is vague and does not identify Reinhardt by name, the allegations concern events that occurred after prosecution had already been initiated. Additionally, prosecutors are immune from liability under § 1983 for prosecutorial functions intimately associated with initiating or presenting the state's case. *Drake v. Howland*, 463 F. App'x 523, 525 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976)). Berryman has not alleged any facts indicating that Reinhardt performed investigative or administrative acts that led to her prosecution. Accordingly, the malicious prosecution claims will be dismissed.

### d.    Glenn Vencill, Kathy Stein, and Jenny Scott

"To state a claim under 42 U.S.C. § 1983, the plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). One who acts under color of state law exercises "power possessed by virtue of state law and made possible only because [the actor] is clothed with the authority of state law." *West*, 487 U.S. at 49. When determining whether a person acted under color of state law, the court looks not to the actor's position, but to the nature of the specific act performed. *Morris v. City of Detroit*, 789 F. App'x 516, 518 (6th Cir. 2019). Acts of judicial officers "in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *See*

- 17 -

*id.*; *King v. McCree*, No. 13-10567, 2013 WL 3878739, at *4 (E.D. Mich. July 26, 2013). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *Lindsey v. Detroit Entertainment, LLC*, 484 F.3d 824, 827 (6th Cir. 2007).

Berryman has failed to allege any facts suggesting that these defendants could have been acting under color of state law during the events alleged. It is well-established that a public defender does not act under color of law when performing traditional functions as counsel to a defendant in a criminal proceeding. *See Polk County v. Davidson*, 454 U.S. 312, 325 (1981). There is no indication that Kathy Stein filed a criminal complaint against Berryman as anything other than a private citizen, outside of her role as a family court judge. Additionally, there is nothing to suggest that Jenny Scott is a state actor.

Berryman correctly points out that private citizens may be considered state actors when they act corruptly in concert with state officials. *See Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003). But Berryman offers nothing more than conclusory allegations to establish that this occurred. (e.g., Vencill was "forced into the case," and was "clearly rooting for the prosecution" from the beginning. [Record No. 14, ¶ 70] "Alan and Kathy Stein provided the financial motive to Defendant Vencill and others." *Id.* at ¶ 98.).

These allegations are insufficient even at the pleadings stage to establish that these defendants were acting under color of state law. Accordingly, the § 1983 claims asserted against them will be dismissed.

### e.   Fayette District Court Clerk Defendants

Berryman named as defendants Vincent Riggs, LaRena Turley, and Deputy Clerk "SM," who she alleges are responsible for "managing and maintaining the records of the Fayette County Courts." She claims that she located a handwritten note inside her criminal

case file stating: "[Berryman] is <u>NOT</u> to handle the case jacket. <u>All</u> copies <u>MUST</u> be made by clerk only per Mr. Riggs." [Record No. 14, ¶ 94] This allegation is listed under Count II—"conspiracy to interfere with civil rights[,] intimidating a party through threat or force," 42 U.S.C. § 1985. Riggs' name is not mentioned again in the Complaint.

As the Court has already explained, Berryman cannot sustain a claim under either provision of 42 U.S.C. § 1985. And it is unclear how her allegation concerning Riggs would fall under any other legal theory or that she was harmed by Riggs' alleged conduct. Accordingly, any claims against Riggs will be dismissed.

Berryman alleges that Turley told her that her motions "would not be heard," that they would be "thrown in the garbage," and that she "could not have Judge Bouvier" for her judge. *Id.* at ¶ 60. She also alleges that Turley refused to provide a copy of a court order for a mental health evaluation to staff at Comp Care on July 19, 2017. *Id.* at ¶ 73. Finally, she alleges that "SM" issued a "commitment order" requiring her to spend seven days in jail. *Id.* at ¶ 79.

These factual allegations are listed under subsections of Count I (malicious prosecution) in which Berryman alleges obstruction of justice and false imprisonment. It is likely that Turley and SM enjoy absolute immunity with respect to Berryman's claims. It is well-established that judges "enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Leech v. Deweese*, 689 F.3d 538, 542 (6th Cir. 2012). This extends to court clerks and other court employees for actions arising out of the performance of judicial or quasi-judicial functions. *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 829 (S.D. Ohio 1999) (citing *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988)).

Regardless, Berryman has failed to allege facts supporting a viable claim under any identified theory. Berryman has not identified a constitutionally cognizable claim for

obstruction of justice under § 1983.  To the extent she seeks relief for obstruction of justice under § 1985(2), that claim is foreclosed for the reasons already explained.  Additionally, the Court has explained that Berryman's false imprisonment claim would be subsumed within the claim for malicious prosecution.  She has not alleged that any of the court clerk defendants were involved in initiating the criminal proceedings against her, so she may not proceed against them on that theory.  Berryman also has failed to allege that the Clerk's office maintained any custom or policy that resulted in a violation of her constitutional rights.  Accordingly, any claims against these defendants in their individual and official capacities will be dismissed.

### 3.    Supervisor Liability

Berryman alleges in Count IV that "[t]he malicious prosecution, false imprisonment, and deprivation of [her] constitutional rights were the direct result of the endorsement of these actions by the supervisory [d]efendants."  She goes on to allege that the defendants knew or should have known of their employees' "unconstitutional actions and related misconduct" and that they "failed to supervise and adequately train their subordinates in [c]onstitutionally adequate law enforcement practices . . . ."  [Record No. 14, ¶¶ 111-13]

While Berryman appears to recognize that supervisor liability under § 1983 cannot be predicated on the theory of respondeat superior, she has provided nothing more than conclusory allegations to support her claim.  For instance, she has failed to indicate which defendants are supervisors and are therefore liable under this theory.  Further, she has failed to provide *any* facts indicating that a supervisory defendant abandoned his or her specific job responsibility where the active performance of the supervisor's individual job function directly resulted in a constitutional injury.  *See Winkler v. Madison Cty.*, 893 F.3d 877, 898-99 (6th Cir. 2018) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).

Accordingly, the supervisory liability claims under § 1983 do not meet minimum pleading standards and are insufficient to withstand the defendants' motions to dismiss.

### 4.       Failure to Intervene

Berryman claims in Count V that "[n]umerous [d]efendants in this cause of action stood by without intervening to prevent or cease the misconduct, and outright criminal behavior of Defendants, despite having a reasonable opportunity and responsibility to do so." [Record No. 14, ¶ 115]  She goes on to allege: "[w]hile Defendants executed their crimes against Plaintiff, the Kentucky Bar Association, the Kentucky Judicial Conduct Commission, the Director of the Administrative Office of the Courts, the Kentucky Attorney General, and the Governor of Kentucky all had full knowledge of what was occurring. . . .  The Defendants listed in this Count were fully aware that Plaintiff had been injured by the Court of Appeals Opinion crime, both financially and through the resulting defamation.  Yet they continued to deny Plaintiff any remedy."  *Id.* at ¶¶ 116-17.

States and state agencies enjoy sovereign immunity from § 1983 suits for damages.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).  And generally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Neither the governor nor the attorney general has waived sovereign immunity with respect to § 1983 suits for money damages, so the plaintiff's claims against them may not proceed.

"The Judicial Conduct Commission is a state body created by the Kentucky Constitution that has the authority to discipline judges for official misconduct."  *Mischler v. Lambert*, No. 3:08CV-231-M, 2008 WL 4327444, at *1 (W.D. Ky. Sept. 19, 2008).  The

Kentucky Bar Association is an arm of the Kentucky Supreme Court. *Jones v. Commonwealth*, 171 S.W.3d 53, 55 (Ky. 2005). Both the Judicial Conduct Commission and the Kentucky Bar Association are immune from liability for monetary damages under § 1983 and the plaintiff's claims against them also will be dismissed. *See Mischler*, 2008 WL 4327444, at 5.

Finally, Berryman seeks monetary damages from Laurie Dudgeon both in her official capacity as Director of the Administrative Office of the Kentucky Courts ("AOC") and in her individual capacity. While it is unclear whether Dudgeon is shielded by sovereign immunity with respect to Berryman's official capacity claims, Berryman has failed to state a claim upon which relief can be granted. *See Mischler v. Stevens*, Pikeville Civil Action No. 7: 13-CV-008-TWP (E.D. Ky. June 26, 2013).

To establish a cause of action for failure to intervene, a plaintiff must show that the defendant observed or had reason to know that a constitutional violation was occurring, and had both the opportunity and the means to prevent the harm from occurring. *Tinney v. Richland Cty.* No. 1:14 CV 703, 2015 WL 542415, at *10 (N.D. Ohio Feb. 10, 2015) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Berryman does not allege any facts indicating that Dudgeon (or any of the supervisory defendants) observed or had reason to know of a constitutional violation or that the AOC maintained such a policy or custom. Additionally, because Berryman has failed to sufficiently allege that she suffered a constitutional deprivation, Dudgeon cannot possibly be liable for a failure to intervene. *See C.A. ex rel. G.A. v. Morgan Cty. Bd. of Educ.*, 577 F. Supp. 2d 886, 895 (E.D. Ky. 2008). Accordingly, the claims against Dudgeon will be dismissed.

### 5.    Conspiracy to Deprive Constitutional Rights

Finally, in Count VII[4] of the Complaint, Berryman alleges that "[t]his cause of action stems from a collective conspiracy to deprive Plaintiff of her basic constitutional rights guaranteed to her as a citizen of the United States of America" and "[a]s a result of Defendants' actions, [she] has been deprived of her Second, Fourth, and Fourteenth Amendment rights." [Record No. 14 ¶¶ 119-122]  To successfully plead a civil conspiracy under § 1983, a plaintiff must allege that a single plan existed, the conspirators shared a conspiratorial objective to deprive the plaintiff of her constitutional rights, and an overt act was committed.  *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).   Conspiracy claims must be pled with particularity; they must be supported by factual allegations that support a "plausible suggestion of conspiracy."  *Twombly*, 550 U.S. at 565; *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) ("[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state [a conspiracy] claim under § 1983.").

As discussed throughout this opinion, Berryman has not provided facts indicating that the defendants agreed upon a single plan and shared a conspiratorial objective to deprive her of constitutional rights.   Berryman simply refers to the "defendants" in this claim, so it is unclear whether she alleges that all thirty-plus defendants participated in a conspiracy, or just some of them.  Regardless, she has not given enough factual detail to establish that a conspiracy existed at all.   Reading the Complaint as a whole, she has failed to identify individual defendants who she believes were involved in the conspiracy aside from Kathy Stein and Jenny Scott.

---

[4]        There is no Count VI.  [*See* Record No. 14, pp. 24-25.]

And even with respect to Stein and Scott (who were not acting under color of law), she has not alleged sufficient facts to establish that there was "a plan or agreement to violate [her] constitutional rights." *See Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).  Instead, Berryman speculates that her appeal of the family court decision "enraged" Stein and Scott, which led them to conspire with unknown law clerks to "hide, forge, and manipulate court orders in the Fayette Court system."  [Record No. 14, ¶ 38]  Berryman appears to claim that she discovered Stein and Scott's "scheme" when she read the Kentucky Court of Appeals opinion and noticed that it included unspecified information that was not available in the Court record.

It is unclear how, but Berryman "essentially expos[ed] [Stein and Scott's] scheme" by filing a motion for rehearing with the Kentucky Court of Appeals.  [Record No. 14, ¶ 40]  Without explanation, events escalated to Stein and Scott "initiat[ing] false criminal charges" against Berryman "in retaliation for exposing their crimes."  *Id.* ¶ 47.  While an express agreement regarding the conspiracy need not be alleged, there must be something more than such conclusory allegations.  *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (factual allegations were insufficient when plaintiff had not provided any "details of time and place," and had "fail[ed] to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense").  Berryman's allegations do not allow the Court to draw the reasonable inference that the defendants participated in a conspiracy to deprive the plaintiff of constitutional rights.  Accordingly, the conspiracy claims under § 1983 will be dismissed.

### 6.    Alan Stein

According to Berryman, Alan Stein is the former husband of Judge Kathy Stein and the father of Edward Stein.  She alleges that he "maintains family and financial ties" with Kathy

- 24 -

and Edward and "holds a position of influence within the community." [Record No. 14, ¶ 8] Alan is mentioned in the Complaint only once more. In describing Count III—malicious prosecution—Berryman alleges that "Alan and Kathy Stein provided the financial motive to Defendant Vencill and the others." *Id.* at ¶ 98.

It is unclear how this allegation relates to the claim of malicious prosecution. Despite amending her complaint twice, Berryman has not made any effort at developing her claims against Alan Stein, despite their patent deficiency. And in the many lengthy filings Berryman has made with the Court, she has given no indication of how Alan was involved in the events underlying her Complaint. Accordingly, any claims against him will be dismissed. *See Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726-27 (D.C. Cir. 1990) (*sua sponte* dismissal appropriate when it is patently obvious that plaintiff could not prevail on facts in complaint); *Avio, Inc. v. Alfoccino of Auburn Hills, Inc.*, 2013 WL 12231775 (E.D. Mich. May 28, 2013) (quoting *McKinney v. State of Okl. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) ("*sua sponte* dismissal under Rule 12(b)(6) is not reversible error when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged and allowing [plaintiff] an opportunity to amend his complaint would be futile[.]").

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. All motions to dismiss [Record Nos. 15, 17, 19, 21, 24, 25, 38, 39, 40, 45, and 54] are **GRANTED**.

2. The plaintiff's claims against all defendants are **DISMISSED**, with prejudice.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: May 15, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky